UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LWANE A. MANSELL,
     Petitioner,

v.                                            Case No. 8:18-cv-1307-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,
     Respondent.
_____/

## ORDER

Lwane A. Mansell, a Florida prisoner, filed a timely[1] pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his conviction. (Doc. 1.) Having considered the petition (*id.*), Respondent's response in opposition (Doc. 10), and Mansell's reply (Doc. 17), the Court orders that the petition is denied. Furthermore, a certificate of appealability is not warranted.

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. 28 U.S.C. § 2244(d)(1). This one-year limitations period is tolled during the pendency of a properly filed state postconviction motion. 28 U.S.C. § 2244(d)(2). The state appellate court affirmed the convictions and sentences on August 4, 2010, and denied Mansell's motion for rehearing on September 10, 2010. Mansell's judgment became final 90 days later, on December 9, 2010, when the time to petition the United States Supreme Court for a writ of certiorari expired. *See Bond v. Moore*, 309 F. 3d 770 (11th Cir. 2002). One hundred and twenty-three days of untolled time passed before Mansell filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on April 12, 2011. The motion remained pending until the appellate court's mandate issued on March 27, 2018. Another 62 days of untolled time, for a total of 185 days, passed before Mansell filed his § 2254 petition on May 29, 2018. Therefore, less than one year of untolled time elapsed, and Mansell's petition is timely.

## I. <u>BACKGROUND</u>

### A. Procedural History

A Florida jury convicted Mansell of one count of luring or enticing a child and two counts of lewd or lascivious conduct. (Doc. 12-2, Ex. 1, pp. 68-69.) The state trial court sentenced Mansell to a total term of 30 years in prison, followed by five years on probation. (*Id.*, pp. 80-98.) The state appellate court per curiam affirmed the convictions and sentences. (Doc. 12-3, Ex. 5.) The state postconviction court denied Mansell's motion for relief under Florida Rule of Criminal Procedure 3.850. (Docs. 12-3 through 12-6, Ex. 10.) The state appellate court per curiam affirmed the denial. (Doc. 12-6, Ex. 14.)

### B. Facts

The victim, 11-year-old J.G., moved to Florida with her mother, brother, and aunt. (Doc. 12-2, Ex. 1b, pp. 291-94.) J.G. first met Mansell when he drove up to her family's home sometime after December 18, 2006, saying that he was picking up kids to go to Sunday school and then to see horses. (*Id.*, pp. 294-96.) With her mother's permission, J.G. went with Mansell. (*Id.*, pp. 301-02.) Mansell drove her to his house, and, once there, J.G. saw children's toys in the yard and a doll in the back of Mansell's Jeep. (*Id.*, pp. 302, 349-50.) Mansell went to the closet to get feed for the horses. (*Id.*, pp. 306-07.) J.G. petted, fed, and rode a horse. (*Id.*, pp. 309-11.) Mansell kept giving J.G. a "kind of creepy" grin.

(*Id.*, p. 312.) J.G. later asked Mansell to take her home, and he did so. (*Id.*, p. 316.) On the drive back, Mansell continued to grin at J.G. (*Id.*)

The next day, Mansell returned to J.G.'s home. (*Id.*, pp. 317-18.) After J.G.'s mother talked to Mansell, she asked J.G. if J.G. wanted to go play with the horses. (*Id.*, p. 318.) J.G. went with Mansell to his house and played with a horse; then, they went to another location where there were several horses. (*Id.*, pp. 319-24.) Mansell drove J.G. home. (*Id.*, pp. 326-27.) On December 25, 2006, Mansell had Christmas dinner with J.G. and her family at their home. (*Id.*, p. 327.)

On December 27, 2006, Mansell again came to J.G.'s home and said that they were going to see the horses. (*Id.*, pp. 328-29.) Mansell drove J.G. to his house and told J.G. to follow him inside. (*Id.*) After J.G. obeyed, Mansell told J.G. to go into his bedroom, and she did so. (*Id.*) J.G. sat on the bed and Mansell gave her a toy (*Id.*, p. 330.) While J.G. played with the toy, Mansell sat down on the bed close to her. (*Id.*, pp. 330-32.)

J.G. started to move away from Mansell, but he put his arm around her and on her shoulder. (*Id.*, p. 332.) Mansell put his other hand on J.G.'s thigh and started to inch his hand closer to her "private area." (*Id.*, p. 333.) Mansell touched the "crotch area" of J.G.'s pants; J.G. felt very uncomfortable and started to move away. (*Id.*, p. 334.) Mansell moved his hand toward J.G.'s "breast area" and touched J.G.'s breast. (*Id.*, pp. 335, 365, 369, 380.) J.G. jumped up and said, "No." (*Id.*, p. 338.)

3

On the way back to J.G.'s home, Mansell said that he would pay J.G. $50 for helping with the horses, and $10 "if [J.G.] would let him touch" her. (*Id.*, p. 340.) J.G. looked away and did not respond, and Mansell "said not to tell anyone else." (*Id.*, pp. 340-41.) After Mansell dropped J.G. off at home, J.G. told her mother what happened. (*Id.*, p. 344.)

The next day, December 28, 2006, Mansell came back to J.G.'s house and her mother talked to him. (*Id.*, pp. 344-45.) After he left, J.G.'s mother called the police. (*Id.*, p. 345.) J.G. gave a statement to Deputy Kathleen Pettit. (*Id.*, p. 347.) Mansell also gave a statement to Deputy Pettit. He said that he would tell her some things, but not everything. (Doc. 12-2, Ex. 1c, p. 417.) Mansell stated that he hugged J.G. but did not fondle her. (*Id.*, p. 418.)

Evidence at trial addressed certain omissions or inconsistencies in J.G.'s statements. J.G. testified at trial that Mansell did in fact touch her breast. (Doc. 12-2, Ex. 1b, pp. 369, 380.) J.G.'s written statement to police said that Mansell tried to touch her in that area. (*Id.*, p. 365.) J.G. told Deputy Pettit that J.G. tried to touch her breast, while at trial she testified that what she meant by that was that Mansell did not touch her nipple. (*Id.*, pp. 368-69.) At her deposition (which is permitted in Florida criminal proceedings), when J.G. was asked if Mansell ever touched her breast, she answered that he did not because she took his hand off her shoulder; however, she also stated that she was sure Mansell did touch the upper portion of her breast. (*Id.*, pp. 370, 378-79.) When Deputy Pettit was

4

interviewing J.G., she motioned to her breast in describing where Mansell touched her. (Doc. 12-2, Ex. 1c, p. 423.)

J.G. testified at trial and at her deposition that Mansell touched her leg and was moving towards her "private area." (Doc. 12-2, Ex. 1b, pp. 333, 376-77.) She did not mention this to Deputy Pettit or in her written statement. (*Id.*, pp. 374-75.) In addition, J.G. testified at trial that Mansell offered her money to touch her, and she also verbally told Deputy Pettit about the offer of money. (*Id.*, pp. 34; Ex. 1c, pp. 412-13.) J.G.'s written statement did not mention the offer of money. (*Id.*, p. 365.) J.G. did not state before the day of trial that Mansell told her not to tell anyone.  (*Id.*, pp. 231-38.)

## II.   STANDARDS OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S.

685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained

7

affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation.

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Mansell brings several claims for ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. <u>ANALYSIS</u>

### A. Grounds One, Two, and Twelve: Barred From Federal Habeas Review

#### 1. Ground One

Mansell argues that the trial court committed fundamental error by allowing the prosecution, first in opening statements, to refer to a statement by J.G. that Mansell had told her "make sure you don't tell about this" in reference to the incident. (Doc. 1 at 5.)

10

Mansell argues that the trial court should have granted a mistrial and insufficiently conducted a *Richardson* hearing. In his view, since the prosecution failed to disclose this statement immediately when it learned of it in violation of state-law discovery rules (Mansell does not appear to dispute that the prosecution itself learned of the statement about 45 minutes before trial commenced), it was unduly prejudicial and the trial court erred when his counsel objected. But this claim is not cognizable on habeas review under § 2254 because Mansell does not allege that his federal rights were violated. Mansell does not claim that the State's failure to disclose the statement deprived him of his Fourteenth Amendment right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963). And while he makes a vague, unelaborated allegation that his sentence violates the Constitution, laws, or treaties of the United States, Mansell fails to argue how the trial court's alleged error in allowing the statement resulted in a violation of his federal rights. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Even if Mansell's claim is construed as federal in nature, Respondent correctly contends that any federal claim is unexhausted due to Mansell's failure to present it in state court. Mansell's brief addressed this alleged trial court error claim only in terms of state law. (Doc. 12-3, Ex. 2, pp. 15-25.) Mansell did not assert a violation of his federal rights or cite any federal authority to support his claim. (*Id.*) Thus, he failed to satisfy the

11

exhaustion requirement. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."); *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 849-50 (11th Cir. 2008) ("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.").

Mansell cannot return to state court to bring the federal claim in a second direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (requiring an appeal be brought within 30 days of the imposition of sentence). Accordingly, Mansell's claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Nor has Mansell established that an exception applies to overcome the default. While Mansell's reply mentions a fundamental miscarriage of justice, Mansell's vague assertion fails to establish his actual innocence. *See Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (stating that the fundamental miscarriage of justice exception "is exceedingly narrow in scope, as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence."). Therefore, Ground One is barred from federal habeas review.

## 2. Ground Two

Mansell contends that "[p]ervasive and persistent misconduct" by the State prevented the jury from rendering an impartial verdict, resulting in a fundamental error. Mansell alleges that the State used tainted evidence during trial: namely, the prosecutor led the victim in her deposition testimony about whether Mansell touched her breast and relied on that testimony to rehabilitate the victim at trial. (Doc. 1, p. 8.) In addition, Mansell asserts that (1) the prosecutor personally attacked defense counsel; (2) the prosecutor improperly attempted to elicit sympathy for the victim; (3) the prosecutor "shifted the focus of the trial"; (4) the cumulative effect of the prosecutor's alleged errors deprived him of a fair trial; and (5) the prosecutor made comments to which counsel did not object that caused fundamental error. (Doc. 1, pp. 7-10.)

Mansell claims a violation of his federal right to a fair trial in his petition. (*Id*., p. 9.)  However, as Respondent argues, this claim is unexhausted due to Mansell's failure to exhaust its federal nature in state court. Mansell's brief raised the prosecutorial misconduct claim in terms of state law. (Doc. 12-3, Ex. 2, pp. 26-35.) Mansell did not allege a federal violation or cite any federal authority to support his claim. (*Id*.) Because Mansell failed to alert that state appellate court that he wanted it to review a federal question, he did not satisfy the exhaustion requirement. Mansell has not demonstrated that an exception applies

to overcome the resulting procedural default. *See Smith*, 256 F.3d at 1138. Accordingly, Ground Two is barred from federal habeas review.

### 3. Ground Twelve

Mansell contends that the trial court committed fundamental error when it failed to instruct the jury on lesser-included offenses when Mansell "was not aware he was waiving his right to lesser included offenses" and was also unaware that instructing the jury about lesser-included offenses vested it "with pardoning power." (Doc. 1, p. 30.)

Mansell has not clearly alleged a violation of his *federal* rights, despite arguing e that his "constitutional rights" were violated. (Doc. 1, p. 31.); (Doc. 1, p. 30 (asserting that the state trial court should have inquired into whether he understood he was waiving his "constitutional right to due process of law").) Because Mansell does not clarify whether he refers to his state or federal rights, he has not shown that his claim is cognizable in this § 2254 proceeding. *See Branan*, 861 F.2d at 1508; *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (explaining that "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim" to properly exhaust it). Even liberally construing Mansell's argument as raising a federal claim, it is unexhausted because Mansell did not raise the claim's federal nature when he presented it in his postconviction motion. (Doc. 12-3, Ex. 10, appellate record p. 92.) Mansell cannot return to state court to present the claim in

either another postconviction motion or in another appeal. *See* Fla. R. Crim. P. 3.850(b), (h); Fla. R. App. P. 9.140(b)(3). Accordingly, the claim is procedurally defaulted, and Mansell does not establish the applicability of either exception to overcome the default. *See Smith*, 256 F.3d at 1138.

Finally, even assuming that Mansell's postconviction motion was construed by the state court as raising a federal claim, it is nevertheless barred from federal habeas review.[2] When Mansell raised this claim in his postconviction motion, the state court denied it as procedurally barred because a trial court error claim must be raised on direct appeal. (Doc. 12-3, Ex. 10, appellate record pp. 106-07.)

A petitioner's failure to comply with state procedural rules governing the proper presentation of a claim generally bars federal review of that claim in a subsequent federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). This is true because a state court's rejection of a petitioner's federal constitutional claim on procedural grounds precludes federal review if the state procedural ruling rests on

---

[2] The response does not recognize that Mansell failed to bring a federal claim in state court. Respondent's argument assumes that Mansell did raise a federal claim. (Doc. 10, pp. 9-10, 22-23.)

an "independent and adequate" state ground. *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1212 (11th Cir. 2009); *see also Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 691-92 (11th Cir. 2020); *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)). A rule must be firmly established and regularly followed by state courts to be considered adequate to foreclose review of a federal claim. *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

Florida courts regularly follow the firmly established rule that claims of trial court error are not cognizable on state collateral review. *See State v. Coney*, 845 So.2d 120, 137 (Fla. 2003) ("To the extent Coney's claims . . . are claims of trial court error, such claims generally are not cognizable in a rule 3.850 motion"); *Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion."). Mansell does not establish that the state court applied this rule to

him in an arbitrary or capricious matter. As the basis for the state court's ruling was adequate to support the decision and was independent of the federal constitutional question, Mansell's federal claim is procedurally defaulted on federal habeas review. It can be considered only if Mansell establishes that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these exceptions). Mansell does not establish that an exception applies to overcome the default. Ground Twelve is barred from federal habeas review.

## B. Grounds Three, Four, And Five: Sufficiency Of The Evidence

### 1. Introduction

Mansell challenged the sufficiency of the State's evidence by moving for a judgment of acquittal. Mansell argues that the trial court erred in denying his motion. Mansell does not allege a violation of his federal rights in any of his sufficiency of the evidence claims. Therefore, they are not cognizable on federal habeas review. *See Branan*, 861 F.2d at 1508.

Even liberally construing his claims as federal in nature, Mansell is not entitled to federal habeas relief. Respondent, assuming that Mansell's § 2254 sufficiency of the evidence claims allege federal violations, contends that the claims are unexhausted and procedurally defaulted because Mansell failed to raise the federal nature of the claims in

state court. Respondent is correct that Mansell's direct appeal brief did not clearly raise a federal question. (Doc. 12-3, Ex. 2, pp. 35-47.)

In the alternative, the Court will presume that any challenges to the sufficiency of the evidence on federal constitutional grounds are exhausted for § 2254 purposes. In *Preston*, the Eleventh Circuit noted uncertainty in the law over whether a petitioner can exhaust a federal sufficiency of the evidence claim by bringing an identical state law claim in state court. 785 F.3d at 459-60. Although the court in *Preston* stated that "it is not at all clear that a petitioner can exhaust a federal claim by raising an analogous state claim," the court did not decide the question. *Id.* at 460. As such, this Court will explain why Mansell's argument on this ground fails even if he had fairly raised a federal constitutional claim in state court.

Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, after viewing the evidence in the light most favorable to the prosecution, any rational juror could have found proof of guilt beyond a reasonable doubt. The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences,

18

the jury is presumed to have resolved those conflicts in favor of the prosecution and against the defendant. *Id.*

Consistent with the AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

### 2. Ground Three

Mansell claims that the State presented insufficient evidence to establish count one, luring or enticing a child. To prove this offense, the State had to prove beyond a reasonable doubt three elements

1.   J.G. was under the age of 12 years at the time of the offense.

2.   Mansell was over the age of 18 years at the time of the offense.

3.   Mansell intentionally lured or enticed or attempted to lure or entice J.G. into a dwelling for other than a lawful purpose.

(Doc. 12-2, Ex. 1, appellate record p. 53.)

Mansell argues that the State failed to prove he intentionally lured or enticed J.G. into a dwelling or attempted to do so. Mansell claims that J.G.'s willingness to go with Mansell shows that he did not entice or lure her. As the statute did not define luring or

19

enticing, the state court relied on *Black's Law Dictionary* for the following definition when considering Mansell's motion for judgment of acquittal: "Enticement of a child is inviting, persuading or attempting to persuade a child to enter any vehicle, building, room or secluded place with the intent to commit an unlawful sexual act upon or with the person of said child." (Doc. 12-2, Ex. 1c, p. 453.) The state court found that, based on evidence of how the events unfolded, the State had established a prima facie case. (*Id.*, pp. 453-54.) The court stated, "[t]here is a series of events, unless I've misheard, where this child is presented with a horse, the opportunity to ride a horse, toys, a doll first and second visit, and then on the third visit allegedly there is this impermissible touching." (*Id.*, p. 453.)

As the state court noted, the Florida statute above does not define "luring" or "enticing." *See* § 787.025, Fla. Stat. But "Florida law recognizes that in the absence of a statutory definition, the plain and ordinary meaning of a word can be ascertained by looking to a dictionary." *Lindemuth v. State*, 247 So.3d 635, 639 (Fla. 3d DCA 2018) (citing *Suddath Van Lines, Inc. v. State, Dep't of Env. Protection*, 668 So.2d 209, 212 (Fla. 3d DCA 1996). Florida courts have examined the meaning of "entice" in the context of § 787.03(1), Fla. Stat., which prohibits knowingly or recklessly enticing a child from the child's parents. *See Leding v. State*, 725 So.2d 1221, 1222 (Fla. 4th DCA 1999) (stating that the word "entice" is "specific enough to give persons of common intelligence and understanding an adequate warning" and approving the trial court's jury instruction on the

definition of "entice," which it based on *Black's Law Dictionary*, as "[t]o wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce. To lure, induce, tempt, incite, or persuade a person to do a thing . . . Enticement of a child is inviting, persuading or attempting to persuade a child to enter any vehicle, building, room, or secluded place with intent to commit an unlawful sexual act upon or with the person of aid child."); *see also Lindemuth*, 247 So.3d at 639 (discussing the definition utilized in *Leding*).

Similarly, in *Grohs v. State*, a Florida court relied on the *Merriam-Webster Online Dictionary* in considered the meanings of the words "entice" and "lure" in the context of § 847.0135(3), which prohibits using a computer service to entice or lure a child to commit certain sexually-related conduct or other child abuse. 944 So.2d 450, 456 (Fla. 4th DCA 2006). The court in *Grohs* stated that, according to the dictionary definitions, "[l]ure generally means 'to draw with a hint of pleasure or gain: attract actively and strongly'" and "entice typically means 'to attract artfully or adroitly or by arousing hope or desire: tempt.'"). *Id.*

The record demonstrates that each time Mansell brought J.G. to his home, he told her (or would have already told her mother who presumably told J.G.) that he would take her to Sunday school or that she would see horses. Mansell contends that the record indicates that J.G. had an interest in those activities and went willingly with Mansell.

21

However, Mansell fails to show that "lure" or "entice" as used in the statute precludes liability when the predator uses something other than the unlawful act he intends on committing against the victim to convince the child to go with him. That scenario does not contradict the ordinary legal meaning of those terms or how Florida courts have interpreted those terms in similar statutes. *See Entice*, *Black's Law Dictionary* (11th ed. 2019) (defining "entice" as "to lure or induce" as in "to wrongfully solicit (a person) to do something"). Additionally, the State's evidence that Mansell touched J.G.'s upper thigh and breast in his bedroom after he told her to go inside the house indicates his intent to lure or entice J.G. inside the home to commit an unlawful act.

Mansell does not establish that the state court's denial of his claim was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. He is not entitled to relief on Ground Three.

## 2. Ground Four

Mansell contends that the State presented insufficient evidence of lewd or lascivious conduct for Count Two, which charged that Mansell touched J.G. while they sat on Mansell's bed. The State had to prove beyond a reasonable doubt:

1.      [J.G.] was under the age of sixteen years.

2.      Lwane Mansell intentionally touched [J.G.] in a lewd or lascivious manner.

(Doc. 12-2, Ex. 1, appellate record p. 55.)

22

Under Florida law, "[t]he words 'lewd' and 'lascivious' mean the same thing and mean a wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing an act." (*Id.*) Mansell unsuccessfully moved for a judgment of acquittal on the basis that the State failed to establish "a prima facie case that he intentionally touched or grabbed her in a lewd or lascivious manner" because J.G. was prompted in her testimony to say that Mansell's hand moved up her thigh and because it was unclear whether Mansell "tried to or did in fact touch her breast." (Doc. 12-2, Ex. 1c, pp. 456-57.)

Mansell argues that J.G.'s prior statements and deposition testimony indicated that he only *tried* to touch her. Mansell argues that "[i]t was only during the direct examination; with the leading by the Prosecutor that JG did testify the Petitioner touched her breast." (Doc. 1, p. 14.) Mansell contends that if he merely "attempted to touch [J.G.] then he did not commit the crime alleged." (*Id.*, p. 15.)

Mansell fails to show that no rational juror, viewing the evidence in the light most favorable to the State, could find proof of guilt beyond a reasonable doubt. J.G. testified that Mansell put his arm around her, put his other hand on her leg and moved it toward her "private area" before touching her "crotch area" and also touched her breast. This testimony supports a reasonable jury's finding that Mansell actually touched J.G. in a lewd or lascivious manner and that his actions went beyond an attempt.

To the extent that Mansell argues J.G.'s testimony was not reliable because of any omissions or inconsistencies in her earlier statements, that credibility determination is properly within the jury's purview. A court on federal habeas review will not re-weigh the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) ("Faced with a record of historical facts that supports conflicting inferences, [a federal habeas court] must presume that the jury resolved such conflicts in favor of the prosecution, deferring to the jury's judgment as to the weight and credibility of the evidence. The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief.") (citations omitted).

Mansell fails to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. He is not entitled to relief on Ground Four.

### 3. Ground Five

 Mansell contends that the State failed to present sufficient evidence of lewd or lascivious conduct for Count Three, which charged that Mansell offered J.G. money to let Mansell touch her. The State had to prove beyond a reasonable doubt:

1.      [J.G.] was under the age of sixteen years.

2.      Lwane Mansell solicited [J.G.] to commit a lewd or lascivious act.

(Doc. 12-2, Ex. 1, appellate record p. 57.)

As with count two, lewd and lascivious both mean "a wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing an act." (*Id.*) To solicit "means to ask earnestly or to try to induce the person solicited to do the thing solicited." (*Id.*) Mansell claims that the State could not prove the offense because there was no evidence of "where he wanted to touch" J.G. (Doc. 1, p. 16.) Mansell claims that concluding he wanted to touch J.G. in a lewd or lascivious manner "would be an impermissible inference." (*Id.*) In denying Mansell's motion for judgment of acquittal, the state court concluded that although Mansell's statement did not indicate where he wanted to touch the victim, evidence that the offer for money was made after Mansell allegedly improperly touched the victim was sufficient to establish a prima facie case. (Doc. 12-2, Ex. 1c, pp. 461-62.) When counsel renewed the motion, the court again denied it on the basis that the offer was made after an alleged impermissible touching. (Doc. 12-3, Ex. 1d, pp. 511-12.)

Mansell fails to show that no rational juror, viewing the evidence in the light most favorable to the prosecution, could have found proof of guilt beyond a reasonable doubt. The conclusion that Mansell was offering money in order to touch J.G. in a lewd or lascivious manner involves an inference based on evidence that Mansell made the offer to J.G. as he drove her home the same day he had touched her breast and private area while sitting on his bed. The State, of course, may prove its case by circumstantial evidence. *See State v. Surin*, 920 So.2d 1162, 1164 (Fla. 3d DCA 2006) ("[T]he Florida Supreme Court

has long accepted that the State may prove an essential element of an offense through circumstantial evidence." (citing *State v. Castillo*, 877 So.2d 690, 693 (Fla. 2004) and *Moorman v. State*, 25 So.2d 563, 564 (1946))).

Mansell has not demonstrated that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination. He is not entitled to relief on Ground Five.

### C. Grounds Six Through Eleven: Ineffective Assistance Of Trial Counsel

#### 1. Ground Six

Mansell argues that trial counsel was ineffective for failing to conduct an adequate pre-trial investigation, leaving him without a viable defense.[3] Mansell first contends that counsel failed to explore his diagnosis of encephalitis, which he contracted "during the Vietnam War," as a possible defense. (Doc. 1, p. 18.) Mansell also argues that counsel failed "to investigate fully the alleged victim and witness statements made to the police." (*Id.*) Mansell appears to claim that trial counsel failed to utilize the victim's statement to

---

[3] Respondent contends that Mansell failed to exhaust the claim because his arguments on collateral appeal differed from the claims he raised in the postconviction court. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."). After reviewing the record, the Court determines that Mansell's claim is exhausted. (*See* Doc. 12-6, Ex. 11.)

police, in which she omitted any mention of Mansell offering her $10 to touch her or saying not to tell anyone.

The postconviction court granted an evidentiary hearing on this claim. (Doc. 12-4, Ex. 10a, appellate record pp. 251-52.) Mansell testified that he and counsel did not specifically talk about possible defenses. (Doc. 12-6, Ex. 10d, appellate record pp. 870-71.) He testified that he believed the truth would be brought out at trial but that the victim was forced to lie. (*Id.*, p. 871.) Mansell further testified that counsel did not learn of his mental status due to encephalitis, which he claimed damaged his brain, and did not have the victim's statement. (*Id.*, pp. 873-75.) Mansell also contended that counsel did not utilize depositions of two officers that he conducted when he was *pro se* for a time prior to trial, which he maintained would have shown the officers made inconsistent statements (*Id.*, pp. 875-78.) When asked what he wanted counsel to do about the victim's statement, Mansell stated that the victim's testimony that he told her not to tell anyone was not true. (*Id.*, p. 880.)

Mansell's trial counsel testified that she met with Mansell and discussed the nature of the allegations, as well as any evidence Mansell might have. (*Id.*, p. 916.) Counsel also reviewed Mansell's medical records, including records referring to encephalitis. (*Id.*, pp. 923-25.) As addressed in more detail in Ground Seven, *infra*, which concerns Mansell's competency to proceed, counsel testified that Mansell understood the proceedings and

their discussions, and that she had no basis to believe his mental health was an issue. (*Id.*, pp. 917-30.)

The postconviction court denied Mansell's claim, finding counsel's testimony to be more credible than Mansell's testimony. (*Id.*, p. 805.) Specifically, that court found that counsel was aware of Mansell's encephalitis, but that the encephalitis did not provide a viable defense. (*Id.*) The court concluded that counsel conducted an adequate pretrial investigation and discussed the case with Mansell, including his "options based on the evidence." (*Id.*, pp. 805-06.) The court also found that Mansell failed to offer any admissible testimony to support his assertion that he did have a viable defense for trial. (*Id.*, p. 806.) Accordingly, the postconviction court found that Mansell failed to show either deficient performance or prejudice. (*Id.*)

Mansell has not shown entitlement to relief. The postconviction court's finding that counsel was credible is a factual finding that is presumed correct absent clear and convincing evidence demonstrating otherwise. *See Rolling*, 438 F.3d at 1301; *see also Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Federal courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court but not by them. We consider questions about the credibility and demeanor of a witness to be questions of fact.") (internal quotation marks and citations

omitted). Mansell does not rebut the presumption of correctness by clear and convincing evidence as he must. 28 U.S.C. § 2254(e)(1).

Counsel's testimony shows that she discussed the case with Mansell and was aware of his encephalitis. Mansell does not show that counsel failed to adequately investigate his case or unreasonably determined not to raise his encephalitis in presenting a defense.

In addition, Mansell does not show that the postconviction court unreasonably rejected his ineffective assistance claim with respect to the witness statements. Counsel's cross-examination of J.G. shows that counsel was aware of J.G.'s prior statements to police (*see* Doc. 12-2, Ex. 1b, pp. 358-375) and, in addition, Mansell does not specifically explain what counsel should have done with the depositions he took.[4] The postconviction court did not unreasonably find that Mansell failed to prove his assertions that he had a viable defense or that counsel's performance was constitutionally adequate. Finally, Mansell's vague allegations are insufficient to show entitlement to relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

---

[4] Mansell took depositions of two law enforcement officers. The only law enforcement officer who testified at trial was Deputy Pettit.

Mansell does not show that the state court unreasonably applied *Strickland* or based its decision on an unreasonable factual determination. He is not entitled to relief on Ground Six.

### 2. Ground Seven

Mansell asserts that trial counsel was ineffective for failing to investigate Mansell's competency to proceed. In support, Mansell states that "he is a Vietnam Veteran who contracted encephalitis in 1970 and over the years has had various mental health issues as a direct result." (Doc. 1, p. 20.) He claims that counsel told him she would have a doctor evaluate him prior to trial, but never did so. (*Id.*) Mansell argues that an evaluation would have shown "the extent of his mental illness and confirmed the fact that this prevented him from fully grasping the legal concepts going on around him, his ability to adequately assist during his trial and his decision making process during tr[ia]l as well." (*Id.*)

The postconviction court granted Mansell an evidentiary hearing. (Doc. 12-4, Ex. 10a, appellate record p. 253.) Mansell testified that he informed counsel in a letter about contracting encephalitis and experiencing depression and mood swings. (Doc. 12-6, Ex. 10d, appellate record p. 872.) Mansell testified that counsel told him she would have a doctor evaluate him. (*Id.*, p. 873.) Mansell testified that he had trouble with memory and concentration, as well as with articulating his thoughts. (*Id.*, pp. 874-75.) He stated that

he had difficulty understanding the trial proceedings and experienced paranoia, lack of trust, anxiety, and depression during trial. (*Id.*, p. 881.)

Trial counsel testified that she met with Mansell and discussed the case with him. (*Id.*, p. 916.) Counsel testified that she was concerned Mansell was "playing games" with her and was trying to act as if he was incompetent. (*Id.*, pp. 917-21, 923, 942.) She testified that Mansell articulated appropriate responses and "totally understood" what they talked about and that Mansell understood the State's burden and court procedures. (*Id.*, pp. 923, 926, 930.) In addition, counsel's review of a prior psychiatric evaluation led her to believe there was no legitimate concern for Mansell's competency to proceed. (*Id.*, p. 926.) Counsel believed that she lacked a good faith basis to seek a competency evaluation (*Id.*, pp. 920-22, 937-38.) Counsel testified that she would not have told Mansell she would send a doctor to evaluate him. (*Id.*, pp. 934-36.)

Dr. Bala Rao, a psychiatrist, reviewed Mansell's medical and court records during the postconviction proceedings and opined that Mansell was competent to proceed at the time of trial. (*Id.*, pp. 964-66.) Dr. Rao testified that nothing about Mansell's encephalitis in and of itself would cause incompetency. (*Id.*, p. 967.) Dr. Rao further testified that his review of the record revealed no indication that Mansell suffered from any mental disease or defect that rendered him incompetent at any time. (*Id.*, p. 988.) Dr. Rao listed Mansell's

diagnoses as intermittent explosive disorder, anti-social personality disorder, and encephalitis when he was in Vietnam. (*Id.*, p. 966.)

The postconviction court found trial counsel and Dr. Rao to be credible. (*Id.*, p. 807.)[5] That court also found that counsel had no good faith basis to request a competency evaluation and that counsel did not advise Mansell she was going to send a doctor to evaluate him for competency. (*Id.*, pp. 807-08.) The court found that Mansell was competent to proceed to trial, as shown by record evidence demonstrating his participation during depositions and his discussions with the court before and during trial. (*Id.*, p. 808.) The court found that while Mansell was a "poor decision maker," a lack of decision-making skills did not render him incompetent. (*Id.*) Further, the court found that any "diagnosed mental illness or encephalitis" did not interfere with Mansell's "ability to know what was going on, to understand the legal process, to comprehend the extent of the trial proceedings, or his competency to proceed to trial and assist with his defense." (*Id.*) Accordingly, the state court concluded that Mansell did not establish either deficient performance by counsel or resulting prejudice. (*Id.*)

The conviction of a mentally incompetent defendant violates due process. *Pate v. Robinson*, 383 U.S. 375 (1966). The standard for competency to proceed is whether the

---

[5] Another doctor, Alessandra Marotti, evaluated Mansell shortly before the evidentiary hearing and opined that Mansell was incompetent to proceed at the time of his trial. (Doc. 12-6, Ex. 10d, appellate record p. 828-36.) The state court did not make a credibility determination as to Dr. Marotti's testimony.

defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960);[6] *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

The postconviction court's finding that counsel and Dr. Rao were credible is a factual finding presumed correct unless proved otherwise by clear and convincing evidence. *See Rolling*, 438 F.3d at 1301; *Consalvo*, 664 F.3d at 845. Mansell does not rebut the presumption of correctness with that burden of proof. *See* 28 U.S.C. § 2254(e)(1).

The testimony that the postconviction court accepted as credible showed that Mansell understood and participated in the proceedings, displayed an understanding of the issues and procedures involved in his case when he spoke with counsel, and might have attempted to manipulate counsel into believing he was incompetent. Such circumstances indicate that Mansell was able to consult with counsel at the time of trial with a reasonable degree of rational understanding and had a rational and factual understanding of the proceedings. *See Dusky*, 362 U.S. at 402. Accordingly, the state court did not unreasonably

---

[6] The *Dusky* standard is set out in Florida law. *See* § 916.12(1), Fla. Stat.; Fla. R. Crim. P. 3.211(a)(1).

conclude that counsel's performance was adequate with respect to Mansell's competency to proceed and that she lacked a good faith basis to seek a competency evaluation. In addition, Mansell fails to rebut the presumption of correctness afforded to the state court's factual finding that counsel did not tell Mansell she would have a doctor evaluate him. Finally, Mansell does not show that the state court unreasonably concluded he failed to show prejudice as a result of counsel's actions. *See Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) ("In order to demonstrate prejudice from counsel's failure to investigate his competency, petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988))).

Mansell fails to show that the state court unreasonably applied *Strickland* in denying his claim, or that the state court's decision was based on an unreasonable factual determination. As a result, he is not entitled to relief on Ground Seven.

## Ground Eight

Mansell claims that trial counsel was ineffective for not properly advising him that he was entitled to jury instructions on lesser-included offenses. He claims that counsel "did not give the information needed to allow Petitioner to make a well-informed decision on this matter." (Doc. 1, p. 22.) Mansell argues that, but for counsel's performance, there is a

reasonable probability the jury would have convicted him of lesser-included offenses, as instructing on lesser-included offenses "vest[s] the jury with pardoning power." (*Id.*)

On count two, lewd or lascivious conduct (touching the victim), the jury was instructed on the lesser offenses of attempted lewd or lascivious conduct and battery. (Doc. 12-2, Ex. 1, appellate record pp. 52, 54-56.) But the instructions contained no lesser offenses for count one, luring or enticing a child, or count three, lewd or lascivious conduct (involving solicitation). (*Id.*, pp. 52-53, 57.)

The postconviction court summarily denied Mansell's ineffective assistance claim, finding that he failed to establish entitlement to relief under either prong of *Strickland*. For count two, the court found "persuasive" the State's argument that counsel was not ineffective because the jury was instructed on lesser offenses. (Doc. 12-4, Ex. 10a, appellate record pp. 254-55.) The court also agreed with the State's argument that the evidence did not support giving instructions on lesser offenses for counts one and three. (*Id.*) In addition, with respect to count three, the postconviction court noted that the trial court rejected counsel's request for an instruction on the lesser-included offense of assault. (*Id.*, p. 254.) The court also pointed to Mansell's instruction to his attorney not to concede to any lesser offenses. (*Id.*, p. 255.)

The postconviction court found that Mansell could not demonstrate either deficient performance or resulting prejudice when "the jury was properly instructed on the lessers on

count two, the evidence did not warrant the giving of any lessers on counts one and three, and Defendant instructed counsel not to concede to lessers." (*Id.*)

Mansell fails to establish that the state court unreasonably found that counsel's performance was not deficient. Counsel's request for an instruction on count three was rejected, and the state court's order shows that counsel had no basis to request additional instructions on lesser offenses. Whether additional jury instructions on lesser offenses were proper involves an application of state law. This Court must defer to the state court's application of state law in reviewing the state court's denial of Mansell's ineffective assistance claim. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of

[petitioner's] statements based on [state law] – the objection would have been overruled. .

. . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Moreover, Mansell does not show that the state court unreasonably determined that

he failed to show prejudice as a result of counsel's performance. Even if it were deficient

not to pursue lesser offenses for count one, Mansell's prejudice argument about the jury

exercising its "pardoning power" underscores that he suffered no prejudice at all. Instead,

he simply asks the federal court now to conclude that the jury would have disregarded its

duty to apply the law as instructed by the trial court. But this Court must presume at this

habeas stage that the jury followed the law and, because it found that he was guilty of

counts one, two, and three, it thus found that the State proved those offenses beyond a

reasonable doubt based on the evidence presented. *See Sanders v. State*, 946 So.2d 953,

958 (Fla. 2006). Thus, Mansell cannot show that the postconviction court's conclusion of

no prejudice was unreasonable.

Finally, Mansell's claim is too vague to warrant federal habeas relief, as he fails to

specifically explain how counsel failed to advise him or what specific jury instructions he

thinks counsel should have requested. *See Tejada*, 941 F.2d at 1559. Mansell  thus  does

not show that the state court unreasonably applied *Strickland* or unreasonably determined

the facts in denying his claim. Ground Eight does not warrant relief.

**Ground Nine**

Mansell alleges that trial counsel was ineffective in not objecting to a "golden rule" violation during the prosecutor's closing argument. He cites the following portion of the trial transcript:

[STATE]: Today Defense counsel tries to pick apart little [J.], 11 years old

THE COURT: Excuse me.

[STATE]: - - but you have to - -

THE COURT: Come on up here.

(A BENCH CONFERENCE WAS HELD, AS FOLLOWS:)

THE COURT: I don't want to hear another reference to Defense counsel tries to pick apart.
. . .

[DEFENSE COUNSEL]: Judge, she also made reference to poor little [J.]. I think that's inappropriate. I believe those were her words, "poor little [J.]"

THE COURT: Stay away from that business.

(THE BENCH CONFERENCE CONCLUDED.)

(Doc. 12-3, Ex. 1d, pp. 594-95.)

Mansell contends that counsel should have objected when the State called the victim a "poor little girl"[7] and should have moved for a mistrial and requested a curative instruction. (Doc. 1, p. 24.) Mansell claims that this statement was a golden rule violation and that counsel's failure to object meant the matter was not preserved for appellate review. (*Id.*)

The postconviction court denied Mansell's claim. The court found that counsel's failure to preserve a matter for appeal is insufficient to demonstrate prejudice under *Strickland.* (Doc. 12-3, Ex. 10, appellate record p. 104.) The court additionally found that the State's comment was not an improper "golden rule" comment because it did not invite the jurors to put themselves in the victim's place. (*Id.*) *See Braddy v. State*, 111 So.3d 810, 842 (Fla. 2012) (explaining that golden rule arguments "are arguments that invite the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering.") (citation omitted). Accordingly, the state court found that Mansell could not show deficient performance by counsel in failing to object to the statement as a golden rule violation. (*Id.*, appellate record pp. 104-05.)

Mansell does not show that the state court unreasonably denied his claim. The state court determined that no objection was warranted because the statement was not a golden rule violation under state law. This Court must defer to that determination of state law.

---

[7] The Court notes that the prosecutor referred to the victim as "little [J.], 11 years old," not as a "poor little girl." (Doc. 12-3, Ex. 1d, p. 594.)

*See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932. Counsel did not perform deficiently by declining to make a meritless objection. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Nor did the state court unreasonably determine that, to the extent Mansell claimed that the failure to object resulted in a lack of perseveration for appeal, he failed to show *Strickland* prejudice. *See Strickland*, 466 U.S. at 696 (stating that "the ultimate focus of the inquiry" when evaluating an ineffective assistance claim "must be on the fundamental fairness of the proceeding whose result is being challenged."). Mansell must show that, had his trial counsel lodged the objection, the outcome would have been different. He has not done so, and he has not shown it was an unreasonable application of federal law by the state court to conclude likewise.

Mansell has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Nine.

**Ground Ten**

Mansell argues that trial counsel was ineffective for failing to object to the prosecutor's inaccurate comment that Mansell confessed to the charges. During the State's closing argument, the following occurred:

> [THE STATE]: Now, the Defense made an issue about the defendant's confession - -

40

THE COURT: Excuse me. Approach the bench.

(A BENCH CONFERENCE WAS HELD, AS FOLLOWS:)

THE COURT: He didn't confess.

[THE STATE]: Or statement.

THE COURT: I don't want to do this, but I'm going to call you up here every time. And I don't want to keep doing this because you are smarter than this. He didn't confess.

[THE STATE]: Statement.

THE COURT: You are going to go back and tell them you misstated and you didn't mean to say confession.

[THE STATE]: Okay.

THE COURT: And I don't want to hear any more references to the Defense. You cannot do it that way. You just cannot do it that way. If there is a guilty verdict, it's not going to stand if you keep doing this. Okay?
. . .

[DEFENSE COUNSEL]: I don't know if the jury can - - I'm sorry Judge. I'm so tired. I don't know if the jury can come back convinced that they can ignore that.

THE COURT: Oh, please. Please.

[DEFENSE COUNSEL]: No instruction from the Court?

THE COURT: Fine. I'll tell them to disregard it.

[DEFENSE COUNSEL]: No curative from the Court about whether they can ignore that?

THE COURT: [State], come up. She's still talking. I'll instruct them to disregard the last statement and you tell them you didn't mean to say confession.

[DEFENSE COUNSEL]: Judge do you feel - - I would ask that they be questioned.

THE COURT: I'm not going to question them. They are not children.

(THE BENCH CONFERENCE CONCLUDED.)

THE COURT: Members of the Jury, you are to disregard the Prosecutor's last statement. There was no confession. Go ahead.

(Doc. 12-3, Ex. 1d, pp. 600-01.)

Mansell argues that, even though the trial court "took immediate notice" of the prosecutor's statement, counsel nevertheless should have "let[ ] the jury hear" an objection

and that counsel's failure prevented him from "having a fair trial as well as appellate review of this issue." (Doc. 1, pp. 26-27.)

The postconviction court summarily denied this claim. The court noted that counsel's request for a curative instruction was granted, but counsel's request to question the jurors was denied. (Doc. 12-4, Ex. 10a, appellate record p. 257.) The postconviction court further found "persuasive" the State's argument that "it would have been futile and foolhardy for Defendant's counsel to request a mistrial when the Court's intended course of action was so obvious." (*Id.*, pp. 256-57.) The state court also agreed with the State's argument that "any harm was remedied by the Court's instruction and comments, and a mistrial was not warranted." (*Id.*)

The state court concluded that Mansell could not show prejudice due to counsel's failure to object "when the court admonished the State before Defendant's counsel could object, and the Court gave the jury a curative instruction to disregard the prosecutor's last comment because there was no confession." (*Id.*, p. 257.)

Mansell does not demonstrate that the state court unreasonably rejected his claim. The record shows that the trial court immediately called the attorneys to the bench, where the court flatly rejected both counsel's suggestion that the jury might not be able to put aside the reference to a confession and counsel's request to question the jury about the misstatement. Under those circumstances, Mansell fails to show any deficient performance

by counsel in not objecting. Moreover, the trial court gave a curative instruction to the jury and clearly informed the jury that "there was no confession." Mansell does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. As a result, he is not entitled to relief on Ground Ten.

## Ground Eleven

Mansell claims that trial counsel was ineffective "when she made a less than adequate attempt at the Motion for Judgment of Acquittal and the trial court was not convinced." (Doc. 1, p. 28.) He claims that counsel failed to present adequate legal authority and "had trial counsel provided a correct legal basis for the Judgment of Acquittal the trial court would have probably granted the motion since the element was not proven." (*Id.*, p. 29.)

The postconviction court summarily denied this claim. The court agreed with the State's response, which noted counsel addressed each of the three counts and that counsel's subsequent renewal of the motion was denied. (Doc. 12-4, Ex. 10a, appellate record p. 258.) The state court found Mansell could not show deficient performance because his attorney "properly argued the motion for judgment of acquittal at trial." (*Id.*, pp. 258-59.)

Mansell fails to show that the state court unreasonably denied his claim. Counsel presented a motion for judgment of acquittal on all three counts. (Doc. 12-2, Ex. 1c, pp. 448-61.) Mansell cites to a portion of the transcript from the final day of the trial, after

counsel had already moved for a judgment of acquittal. (Doc. 12-3, Ex. 1d, pp. 509-12.) Counsel raised additional arguments, citing *Randall v. State*, 919 So.2d 695 (Fla. 4th DCA 2006) and *Kobel v. State*, 745 So.2d 979 (Fla. 4th DCA 1999). (*Id.*) The trial court told counsel that counsel "had every opportunity to do research" and "should have been prepared because everybody knew what the facts were going to be yesterday." (*Id.*, p. 511.)

However, counsel raised *Randall* in presenting the motion for judgment of acquittal, and the court considered *Randall*, including *Randall*'s discussion of *Kobel*, in ruling on counsel's motion. (Doc. 12-2, Ex. 1c, pp. 457-62.) Further, on the last day of trial, when counsel presented additional argument, the trial court made clear that at the time it ruled on the motion for judgment of acquittal, it was aware of the decisions, considered them when ruling on the motion for judgment of acquittal, and found those decisions distinguishable from Mansell's case. (*Id.*, pp. 511-12.) Mansell fails to show that counsel performed deficiently, or that he was prejudiced by counsel's performance. Moreover, as Mansell does not clearly explain what else counsel should have researched or argued with respect to the motion for judgment of acquittal, his claim is too vague to warrant relief. *See Tejada*, 941 F.2d at 1559.

As Mansell fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Eleven.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Mansell must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mansell has not made the requisite showing. Finally, because Mansell is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

It is therefore **ORDERED** that Mansell's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Mansell and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on September 23, 2021.

Kathryn Kimball Mizelle
United States District Judge